Attorney for Debtor
Pia J. North, Esq. #29672
North Law
5913 Harbour Park Drive
Midlothian, VA 23112

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

IN RE: Roger A. Preston and Yvette A. Preston, Debtors          Case#: 13-36881
                                                                Chapter 13

### Response to Estate of Grace G. Moore
### Objections to Applications for Supplemental Compensation

1. The instant case is not a typical bankruptcy proceeding, an unusually large number of issues were contested by the Estate of Grace G. Moore ("Estate"). Additionally Roger A. Preston and Yvette A. Preston ("the Debtors") had ownership interests in five parcels of real property at the time they filed their Chapter 13 petition.

2. The Debtors and the unsecured creditors have received the following benefits from the legal services provided in the Application for Supplemental Fees.

    a. The Petition was filed on Christmas Day 2013 following a judgment obtained by Grace Moore on December 9, 2013. The filing of the Bankruptcy precluded the judgment from attaching to the realty as a valid judgment lien. This resulted in the largest debt remaining an unsecured debt with no interest, increasing funds available to pay general unsecured claims.

    b. After numerous requests to the Estate which commenced on December 26, 2013, North & Associates successfully negotiated the release of the Estate's invalid judgment lien docketed in the Circuit Court for the City of Richmond on January 8, 2014. The lien was finally removed on August 21, 2014.

    c. The general unsecured creditors have received more than they would have received in a petition filed under Chapter 7. The confirmed plan filed on November 24, 2014 (Doc 71) provided for a 1% payout for unsecured claims totaling $135,686.05. Chapter 13 Trustee records reveal that all of the general unsecured creditors, including the Estate, have already received funds in excess of

       1%. If the Court grants the relief requested in the Application for Supplemental Compensation, the payout to the unsecured creditors will not be less than the anticipated percentage pursuant to the confirmed plan.

    d. North & Associates cooperated with the Estate by voluntarily providing information and access to the property for purposes of appraisal which streamlined the legal process making it unnecessary for the Estate to conduct extensive discovery including requests, interrogatories and depositions as originally suggested by counsel for the Estate.

    e. North & Associates resolved the disputed pre-petition arrearage with the Virginia Credit Union in the Debtors' favor.

3. The Estate filed a Limited Objection to Motion to Sell on October 18, 2014 (Doc 54). Paragraph 20 provides *"The Moore Estate does not object to attorney's fees in excess of $5,000 being paid from the monthly plan payments being made by the Debtors pursuant to their Second Modified Plan currently before the Court."* The apparent change in the Estate's position occurred after the sale of the realty fell through because the Debtors and the Buyers failed to agree on the sales price following the discovery of a defect in the property. That event was outside of the control of North & Associates and does not diminish the legal work conducted to advance the Debtors' positions over the course of its representation.

4. The Estate makes sweeping generalizations that legal services performed and documents filed on behalf of the Debtors were flawed, therefore, supplemental compensation should be refused. Although there were four plans filed in this matter, each plan advanced valid legal positions that were opposed by the Estate. The proposal of plans that are in the best interest of one's clients to the detriment of opposing parties is active advocacy and does not render the plans erroneous or without merit. Plans filed for the advancement of one's client are advocacy and not deficient simply because they fail to appease an opposing party. The First Plan dated January 7, 2014 (Doc 13) proposed to pay 51% to unsecured creditors based on the liquidation test valuing the property at $249,300. The valuation of the property was based on a Current Market Analysis performed upon the filing of the petition. The plan proposed a step up in plan payment from $300 per month to $1,100 per month after 12 months in anticipation of Mr. Preston obtaining employment in the

interim. The plan proposed that over the course of a year the Debtors would obtain a 2nd mortgage on the property in order to make a lump sum payment of approximately $56,000.

5. The Estate filed a deficient Objection to Chapter 13 Plan on March 26, 2014 (Doc 21) and a Corrected Objection to Chapter 13 Plan on March 27, 2014 (Doc 23). The Objection indicated: (1) The value of the property was understated. (Although the Estate mistakenly states *"at the $149,300.00 figure set forth in the Debtors' Schedules* in Paragraph 8). Schedule A sets forth a value of $249,300. (2) All general unsecured creditors would receive a portion of the proceeds from the sale of the realty. (3) The Debtors understated the value of the property (4) The Debtors' current income does not support a step up in payment. No details as to the anticipated refinance in December 2014. (5) The Debtors bankruptcy was filed in bad faith because it was filed shortly after the state court rendered a judgment.

6. The Debtors' First plan was not legally deficient in any way and was proposed in compliance with 11 U.S.C. § 1322. The plan was filed within two weeks of filing the petition allowing a reasonable period of time for Mr. Preston to obtain employment to increase the household income that would allow the Debtors to qualify for a second mortgage at the conclusion of a year. The value of the property was based on a recent Current Market Analysis. None of the aspects of this plan were deficient, the plan of action was reasonably practicable and based on the facts as they were known two weeks after filing the petition. Essentially there was a disagreement as to the value of the property and a plan of action that was advanced in good faith with a reasonable chance of success. The Debtors were eligible to invoke the automatic stay and the filing of a bankruptcy under those circumstances does not rise to a level of bad faith.

7. After the Objection to Chapter 13 plan and prior to Ms. Moore's death, the Estate and the Debtors entered into a series of negotiations which endeavored to pay the $119,682.50 judgment in full with interest. A ten and fifteen year mortgage was calculated, proposed and considered. However after Ms. Moore's death in May 2014 negotiations resumed but the term of payments were proposed for seven years or five years with a balloon payment at the end of the term. Each of these proposals resulted in recalculations on behalf of the Debtors for acceptable interest rates and terms of repayment. Initially the Estate conditioned such payments upon the Debtors dismissing their petition. These requests were successfully rejected and were stricken from subsequent agreements. The

parties were not able to come to acceptable terms, however a great deal of time was expended between March and June 2014 in an effort to resolve differences and narrow the issues.

8. The Debtors' Second Plan filed on June 24, 2014 (Doc 28) proposed that the Debtors would sell the realty in dispute. Plan payments remained $300 for 36 months. The Estate and other joint creditors were limited to the funds from the liquidation of the realty in compliance with the Chapter 7 liquidation test, the general unsecured creditors would be paid 10% of validly filed claims.

9. The Estate filed an Objection to the Second plan on August 13, 2014 (Doc 32) with an incorrect docket code, then subsequently filed a correctly docketed Objection (Doc 34). (1) The Estate disagreed with the provision that limited its distribution to the liquidation proceeds. (2) Objected to the feasibility of the plan based on inclusion of a pre-petition arrearage alleged on the Virginia Credit Union proof of claim and included in Section 5A of the new plan (3) Protested that the plan provided no timetable for the sale. (4) Points out the sole error on the plan, the Schedule I attachment to the plan was not changed to correct the new change of circumstances. Objections 1-3 are plan provisions proposed in good faith and in compliance with 11 U.S.C. § 1322. It is not error to propose a plan which that does not set forth the exact timing of events that are outside of the Debtors' control – the date that realty will sell.

10. The Debtors' Third Plan was filed on September 23, 2014(Doc 44). During the intervening months between the Objection to the Second Plan and the Third plan, the Debtors and the Estate endeavored to craft an agreement which included extensive provisions which were set forth in Paragraph 11 for the benefit of the Estate. Joint creditors were to be paid from both the liquidation and the proceeds from plan payments. By agreement, no deadline for the sale of the property was included in the plan. (Which was no different than what the Debtors proposed in the second plan). The inclusion of several provisions in Paragraph 11 that were not required by law and inured solely for the benefit of the Estate seem to fly in the face of the Estate's argument in Item 15 of its Objection to Application for Supplement Compensation (Doc 78) that *"…every action taken by the Debtors during the bankruptcy case has been designed to harm the Moore Estate and its interests."* The Third plan amended the Virginia Credit Union pre-petition arrearage to $0.00 upon successfully resolving the erroneous pre-petition arrearage in the Debtors' favor. Additionally drafts of proposed plans were forwarded to the Estate well

in advance of deadlines, however the failure of the Estate to review and respond in a timely fashion created a crisis situation which caused the Debtors' Amended plans to be filed without the input of the Estate.

11. The Estate filed an Objection to the Third Plan on October 22, 2014 (Doc 61) (1) The Estate references its Limited Objection to Motion to Sell regarding how funds would be distributed to creditors (2) The claims filed by Capital One are for two individual debts and not a joint debt, therefore, Capital One is not a joint debt and not entitled to a liquidation distribution (3) "The Second Modified Plan seems to suggest … that once joint creditors are paid from the proceeds…their pro rata share…shall be reduced…" (4) Debtors propose to make payments pursuant to a non-existent Order to Sell. (5) The Estate rescinded its consent to a previously negotiated term of the plan (6) Objects to Debtors' legal fees without having an opportunity to review and respond to a fee application. (7) Objects to a 36 month plan while erroneously asserting that prior plans were 60 months.

12. The Third plan was filed in accordance with the provisions of 11 U.S.C. § 1322 (1) Objections to the Motion to Sell did not relate to the validity of the plan (2) Although the Debtors were authorized users on the same account, the Debtors do not dispute that Portfolio Recovery Associates, LLC filed the claims as individual debts. Therefore Capital One should not be treated as a joint creditor. The error, in this case, was on the part of Portfolio Recovery Associates, LLC and not counsel for the Debtors. (3) This objection is not supported by the actual language in the plan.  The plan clearly states that the Estate is entitled to both the proceeds of the sale AND distributions from the Trustee for the duration of the plan. (4) Debtors are proposing to make payments to the joint creditors in compliance with an anticipated future Order to Sell which had not been entered since the notice period was still pending. Obviously no Order had been entered at the time. Therefore, there was no basis for that objection point. (5) This plan provision was included based on the consent of the Estate and the Objection reneges on that promise. (6) The Debtors' plan only proposed the standard fee pursuant to the Disclosure of Compensation of Attorney for the Debtor. (7) The Estate incorrectly states that prior plans were 60 months.  All prior plans were 36 month plans.

13. The Fourth Plan filed on November 24, 2014 (Doc 71) was confirmed without Objection on January 6, 2015 and docketed on January 7, 2015. In that plan the Debtors surrender

their interest in the realty and provide for a 1% payout to unsecured creditors. As in previous plans, payments of $300 per month for 36 months.

14. Paragraph 11 of The Estate's Objection to Application for Supplemental Fee ("Objection to Fees") asserts that there were *"numerous promises and representations that the Debtors were keeping the mortgage current at least through January 2015"*. There were no such representations. By design, the vast majority of communications with the Estate were by email. Perhaps the Estate is referring to the extensive negotiations between the Estate and the Debtors for the language that appears in Plan 3 (Doc 44) Paragraph 11(8) *"The Debtors agree to stay current on their mortgage, taxes and insurance until the sale of 2402 Rosewood has been closed"*. That plan was withdrawn when the Debtors later decided to surrender the realty. Prior to Plan 3 being filed there were numerous truthful representations that the Debtors were current. By the Estate's own admission, the mortgage was current through September 2014. There is one communication in November 2014 when the Estate raised questions regarding the Debtors being current on the mortgage. The notes on this communication show that Mandy's response *was "I think so, but I have to check"*.

15. It is improbable that the Estate will realize nothing from the sale of the property as the Estate predicts in Paragraph 13. The equity cushion in the realty is well over $100,000 even if the property is sold well below market value. There is a Virginia Credit Union mortgage balance of approximately $140,000. The last estimate of value based on the condition of the property in September was approximately $279,000. The Estate is likely to receive a substantial portion of its claim upon the sale of the realty. The Debtors have cooperated with the Virginia Credit Union to ensure that the property is secure.

16. Paragraph 15 of the Objection to Fees asserts sweeping unfounded generalizations of Ms. North's mistakes and failure to control clients by *"assisting them in their insidious plans"*. The Estate and the Debtors are engaged in adversarial proceedings. Inevitability actions taken to advance the best interest of one's client may inure to the detriment of the opposing party. This is the natural progression of the adversarial process. Contrary to the Estate's assertions, there are no examples of *"mistakes made in one plan that are repeated in multiple plans"*.

17. In Paragraph 16 the Estate asserts *"…Ms. North …. made… mistakes in preparing and filing deficient plans…."* This assertion is without merit. Four plans were filed in this matter. Although they were objected to, none of these plans were legally deficient and all

were in compliance with 11 U.S.C. §1322. Amended plans were proposed to address objections by the Estate, and to add language the Estate requested. Amended plans were made necessary by the Debtors' change of circumstances over the period of time that the plans were proposed. Each Amended plan was proceeded by a series of negotiations and recalculations designed to streamline the legal process with the goal of proposing plans by agreement. Many of the confirmation hearings were continued to allow counsel time to craft agreements designed to take into account the interests of the Debtors, the Estate and the general unsecured creditors.

18. Paragraph 18 of the Objection to Fees sets forth the Estates comments on the Motion to Sell Real Property. Although it is generally the policy of the firm to file a Motion to Sell after obtaining the HUD1, the conditions of the sale made it impossible to follow this procedure. The Contract provided for the Closing to take place in November. The Motion was filed soon after obtaining the contract to allow the twenty-one day notice period to commence. Since no HUD1 was available, the Motion had to be drafted using estimates. Later the Motion to Sell was amended to expedite the hearing as the Buyers refused to conduct an inspection of the property prior to Court approval of the sale. Further, by agreement with the Estate, the Motion set forth a modified distribution arrangement which would transfer funds directly from the closing agent to the Estate instead of those funds passing through the Chapter 13 Trustee first.

19. Jason M. Krumbein is a 1099 independent contractor employee of North & Associates who has been on the payroll since May 8, 2013. Mr. Krumbein was very well prepared for every hearing. North & Associates did not bill for Attorney Krumbein's time for briefing and preparation to avoid excessive billing. A striking example of this is the May 2, 2014 meeting that shows 3.1 hours for Mandy and Pia. That meeting took place at Attorney Krumbein's office. The Time Sheet on the Application for Fees omits the numerous communications between Ms. North, Mandy and Attorney Krumbein. There were few occasions that Attorney Krumbein and the attorney for the Estate interacted. The Debtors were sorting out their options and Attorney Krumbein did not and could not make any promises as evidenced by the extensive negotiations between the Estate and North & Associates that continued to take place after each interaction between the attorney for the Estate and Jason Krumbein.

20. Paragraph 20 states that Ms. North failed to communicate with the Estate's counsel. By design, the vast majority of the communications between the Estate and North & Associates were conducted by email. The emails emanating from North & Associates through Mandy were either discussed, dictated or drafted by Ms. North. Communications made through clerical staff are a safeguard against counsel being forced to resign as counsel in order to act as a witness in a matter. This procedure served to reduce the legal fees that were billed in this matter as the time involved in communications between Ms. North and Mandy are not billed and each of the communications between the Estate and North & Associates were billed at the legal assistant rate. The email documentation of communications between the Estate and the Debtors will prove beyond any shadow of a doubt that the *misrepresentations and promises* alleged by the Estate are without merit.

21. The $410.00 attorney rate in the Supplemental Fee Application is reasonable. Ms. North has filed more than 3,000 bankruptcies in a twenty-six year career between 1989- 2015. The $9,000 requested relief which includes the fees requested in the Disclosure of Compensation of the Attorney for the Debtor of $3,000 is an amount significantly less than the legal fees detailed in the table in Paragraph 8 of the Application for Fees. The table in Paragraph 8 of the Application for Fees establishes fees totaling $18,998.75 for time in excess of 79 hours expended by the firm. The Table on Page 2 of the Application for Fees deliberately excludes time expended by Jason M. Krumbein. If the fees for Jason Krumbein were included, the legal fees would total more than $20,000.

22. Legal fees in excess of $4,800 were incurred between the initial contact with the firm up to but not including the first Objection ever being filed with the Court. A great deal of time was expended to research, sort out, document and schedule the five parcels of real properties of which Mrs. Preston was one of several owners in varying degrees. In excess of $6,900 (this is includes the above referenced $4,800) of legal fees were incurred for time not related to objections which include the preparation of the case, the first plan and the preparation of the final plan which was confirmed, defense of Motion for Relief, defense of Motion to Sell filed by the Estate of Fred D. Gregory, Jr. Time expended in obtaining a release of the Estate's invalid judgment lien, investigating claims made by the Estate that impugned Mr. Preston's character and disputing Virginia Credit Union's erroneous proof of claim.

Wherefore Pia J. North requests that the Court overrule the Objection to Application for Supplemental Compensation filed by the Estate and approve the Application for Fees as filed.

Respectfully submitted:
/s/ Pia J. North

Pia J. North, Counsel for the Debtors

Certificate of Service

I hereby certify that on this 5/12/2015, I served the foregoing document via email or the Electronic Case Filing system to: Suzanne E. Wade, P.O. Box 1780 Richmond, VA 23218-1780, United States Trustee at 701 E. Broad Street, Room 4304, Richmond, VA 23219. Counsel for the Estate of Grace G. Moore via ECF. Roger and Yvette Preston by email.

/s/Pia J. North
Pia J. North